RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name:

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

DEMOND D. LILES,

        *Petitioner-Appellant,*

    *v.*

V. MICHAEL FISHER, Warden,

        *Respondent-Appellee.*

No. 25-3529

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Toledo.
No. 3:17-cv-02232—James G. Carr, District Judge.

Argued:  April 30, 2026

Decided and Filed:

Before:  KETHLEDGE, NALBANDIAN, and RITZ, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:**  Mugdha H. Gurram, Benjamin F. Perelmuter, NEW YORK UNIVERSITY, New York, New York, for Appellant.  Layne H. Tieszen, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.  **ON BRIEF:**  Mugdha H. Gurram, Benjamin F. Perelmuter, Daniel S. Harawa, Adam B. Murphy, NEW YORK UNIVERSITY, New York, New York, Allison F. Hibbard, Mayfield Village, Ohio, for Appellant.  Katherine E. Mullin, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

─────────────────

**OPINION**

─────────────────

NALBANDIAN, Circuit Judge.  After Ohio police caught Demond Liles trafficking cocaine, Liles entered a plea agreement.  In it, the state promised not to make a sentencing recommendation.  But during Liles's sentencing hearing, the prosecutor advocated for a lengthy

sentence. Liles's attorney didn't object, and the court imposed a lengthy sentence that was within state guidelines. Eventually, Liles sought habeas relief, arguing that the state breached the plea agreement by making a recommendation at his sentencing hearing. The district court denied relief because of Liles's procedural default. Now, Liles appeals, arguing that we should excuse the default because of his attorney's deficient performance. Yet because Liles hasn't shown that he was prejudiced by his attorney's failure to object, we AFFIRM.

## I.

### A.

Demond Liles had a brief career as a drug trafficker in Ohio. He was arrested in 1998 for dealing crack, and again in 2000 for dealing cocaine, crack, and crack-cocaine. After Liles served a stint in prison, police again caught him trafficking cocaine. That fall, he'd sold cocaine to police informants seven separate times, leading to a fifteen-count indictment. At first, Liles pled not guilty. But he eventually entered a plea agreement, pleading guilty to four of the fifteen counts.

This case is about the plea agreement. The agreement included concessions from both sides. Liles agreed to plead guilty to four counts of trafficking cocaine. He admitted to trafficking high volumes as a "major drug offender," and he let the state seize his Nissan and his van. In return, the state agreed to two conditions. First, it agreed to drop eleven counts. This reduced Liles's potential maximum sentence by forty years, moving the state's guidelines calculation from 11–71.5 years to 11–31.5 years. Second, the state agreed to "make no sentencing recommendation," as indicated by a marked checkbox on the written plea agreement. But the state apparently misunderstood this written concession. At the change-of-plea hearing, the prosecutor told the court that he'd agreed not to make a "*specific* sentencing recommendation." R.30-2, PageID 2348 (emphasis added). And the state had explicitly reserved the right to be heard at sentencing.

At the sentencing hearing, the state urged the court to impose a lengthy sentence. The prosecutor gave a long statement where he described Liles's criminal activity as a drug

"enterprise"—a word that Liles's attorney objected to. *Id.* at PageID 2387. The judge replied "it's just argument at sentencing. Overruled. Go ahead." *Id.* Then the prosecutor concluded:

> I would submit to the Court that, without making a specific recommendation, that certainly a longer sentence, a much longer sentence, is the appropriate sentence and anything less would demean the seriousness of this offense. . . . It is our belief that you owe it to the community to impose a very, very substantial sentence on this defendant.

*Id.* at PageID 2390–91. Liles's attorney didn't object. Instead, he responded with his own statement, explaining that Liles had accepted responsibility, wouldn't reoffend, and was a family man.

Then the court heard testimony. It heard from witnesses in the community, and it questioned Liles about his crimes. During this exchange, Liles told several stories. Most notably, he claimed that the drug transactions stemmed from an earlier motorcycle transaction. Liles said he'd sold a motorcycle on behalf of the police's informant, but the buyer "beat [him] real bad" and threatened his life after noticing the motorcycle's defects. *Id.* at PageID 2404–05. Liles contacted the County Sheriff about these threats, but the Sheriff didn't help. So the informant recruited Liles to sell drugs, hoping to recoup the cash and refund the buyer.

When the judge started asking questions, the hearing heated up. He asked "why are we at the point now [in this town] where people have to worry about getting shot at?" *Id.* at PageID 2408. Liles interjected, but the judge continued, "[i]s part of . . . the cause . . . that there are people selling drugs and the whole drug culture? Has that not contributed to this fear that you're going to [g]o down this street or that street and get shot at?" *Id.* This sparked a debate over the root cause of drug crimes. Several members of the gallery expressed their support for Liles. Soon, the argument pivoted to Liles's culpability:

> Liles: [Kids] don't see nobody standing on the corner saying, "you can do better." . . . I don't feel like I was born to sell drugs.
>
> Judge: You made the choice.
>
> Liles: It was a choice made --
>
> Judge: You made the choice.

Liles:   -- because of the environment and not because I just said "today I'm going to sell drugs". I actually seen somebody doing it. I didn't know nothing about drugs.

Judge: Yea, most kids don't. They learn it from somebody.

*Id.* at Page ID 2411.

In the end, the court sentenced Liles to four consecutive prison terms, totaling 25 years. Liles started his sentence in 2014.

**B.**

The next year, Liles appealed his sentence. *State v. Liles*, 2015 WL 4610672, at *1 (Ohio Ct. App. Aug. 3, 2015). His appeal focused on the plea agreement, arguing that the prosecutor had violated the agreement by recommending a lengthy sentence. Liles also added that his counsel was ineffective by not objecting, and that the court should've imposed concurrent sentences.

The state appeals court affirmed the sentence. It reviewed the sentence for plain error, because Liles hadn't objected at sentencing. The court found that although the prosecutor had breached the plea agreement, "the record does not indicate that the prosecutor's statements at sentencing improperly influenced the trial court's sentence in such a manner as to establish plain error." *Id.* at *10. The court pointed to the trial judge's "extensive dialogue" with Liles, explaining that "the record simply fails to substantiate Liles'[s] claims that plain error exists either to negate the knowing, intelligent, and voluntary nature of his guilty plea or to establish that the trial court's sentence would have been any different had the prosecutor not breached the plea agreement." *Id.* at *10–11. The Ohio Supreme Court declined to exercise jurisdiction.

As it turns out, several characters from this saga were crooked. Liles's trial lawyer, Christopher Bucio, ran a sketchy legal practice. According to Liles, police raided Bucio's office days before Liles's change-of-plea hearing. And two years later, Bucio pled guilty to a felonious scheme where he'd sold his client's farmland and secretly pocketed the money. *See Disciplinary Couns. v. Bucio*, 93 N.E.3d 951, 953–54 (Ohio 2017). But the criminal cast didn't stop there.

Soon after Liles appealed, the FBI opened an investigation into Liles's friend—the County Sheriff, Samuel Crish.

When Liles found out about Crish, he filed for state habeas relief. He claimed that Crish had entrapped him to avoid paying a $20,000 debt. He also pointed to his lawyer's ineffectiveness, alleging that Bucio pushed him to accept a plea deal shortly after police raided Bucio's office. Still, these accusations fell flat. The original state court judge recused himself due to Liles's accusations of racial bias, and the second judge rejected the habeas petition as uncredible. So Liles again appealed to the Ohio Supreme Court. And in the meantime, he moved the trial court to order the production of the state's investigative materials related to Crish. The trial court denied his motion, and the Ohio Supreme Court declined to exercise jurisdiction. Liles renewed his trial court motion, which the trial court again denied. But eventually, Crish pled guilty to extortion and bribery. He'd extorted dozens of people to fund his gambling habit, to the tune of $600,000.

So Liles made several more motions. He filed a motion for leave to move for a new trial, claiming to have new evidence of Crish's scheme. On the same day, Liles filed a second state habeas petition. Again, he claimed to have new evidence. The trial court denied both motions. It construed the first motion as a motion to withdraw a guilty plea, holding that Liles hadn't demonstrated the "manifest injustice" required under Ohio Criminal Rule 32.1. And it denied the second motion under the high standard required to file a second state habeas petition. Liles unsuccessfully appealed the second denial, then appealed to the Ohio Supreme Court, which declined to exercise jurisdiction.

**C.**

During his state-court litigation, Liles filed a federal habeas petition. He made five claims. The first two claims invoked his breached plea agreement. In the third, he argued ineffective assistance of counsel. And his final two claims alleged his ability to exonerate himself through new evidence.

The magistrate judge recommended that the district court rule for Liles on the first two claims. For each claim, the key issue was "procedural default"—if a prisoner misses a viable

state-court opportunity to challenge his sentence, he can't raise that challenge in a federal habeas claim unless he shows "cause" for his failure and "prejudice" stemming from it. *See Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991). The magistrate judge found that although Liles had procedurally defaulted on every claim, he'd established cause and prejudice to excuse his default of the first two. She found that "trial counsel's failure to object undermines confidence in the outcoming [sic] of the sentencing proceedings." R.33, PageID 2498. More specifically, the magistrate judge thought that the prosecutor's statements probably lengthened Liles's sentence, rejecting the Ohio appeals court's opposite position.

Two years later, the district court rejected the magistrate judge's recommendation. It reviewed the recommendation de novo, finding that Liles couldn't excuse the procedural default because he hadn't shown prejudice. That is, "the record indicates that the sentencing court rested its sentence on bases 'entirely independent of the prosecutor's recommendation.'" R.40, PageID 2617 (quoting *Dudas v. Gansheimer*, 2010 WL 9038323 at *17 (N.D. Ohio Oct. 1, 2010), *report and recommendation adopted*, 2012 WL 5931783 (N.D. Ohio Nov. 27, 2012)). So because Liles "failed to demonstrate prejudice arising out of his claim of ineffective assistance of counsel that suffices to excuse the procedural default of his underlying claim," the court denied his petition. *Id.* at PageID 2618. Still, the district court certified two issues to our Court: whether "(1) unconstitutionally ineffective assistance of counsel excuses Petitioner's procedural default of his breach-of-plea-agreement claim," and whether "(2) Petitioner's breach-of-plea-agreement claim states a valid claim of the denial of a constitutional right." *Id.* at PageID 2621.

## II.

### A.

In habeas cases, "we review a district court's legal conclusions de novo and its factual findings for clear error." *Jackson v. Cool*, 111 F.4th 689, 695 (6th Cir. 2024); *Hodges v. Colson*, 727 F.3d 517, 529 (6th Cir. 2013) ("Whether a petitioner's federal habeas claim is barred by procedural default is a question that we review de novo."). And because Liles is "in custody pursuant to the judgment of a State court," the Antiterrorism and Effective Death Penalty Act (AEDPA) applies. *See* 28 U.S.C. § 2254. This statute imposes several rules that give state-court

decisions "the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). Under those rules, we presume that state courts' factual findings are correct, 28 U.S.C. § 2254(e), and we require prisoners to exhaust their available state-court remedies before we consider their petitions, *id.* § 2254(b).

So Liles's federal habeas claim fails if he missed a state-court opportunity to bring the claim. In particular, "[h]e must either have 'exhausted the remedies available' to him in state courts, the state courts must lack a remedy, or the state's process must be ineffective to protect his rights." *Gaither v. Lane*, 169 F.4th 716, 721–22 (6th Cir. 2026) (quoting 28 U.S.C. § 2254(b)(1)). But sometimes, a prisoner misses his legitimate chance to bring a claim in state court because he fails to abide by a state procedural rule. *See id.* at 722. That's called a procedural default. *See Martinez v. Ryan*, 566 U.S. 1, 9 (2012).

Liles admits that he procedurally defaulted on his plea-breach claim by not objecting to the prosecutor's statements. *Cf. Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). But he can overcome his default by showing "cause" for it and "prejudice" resulting from it. *See id.*; *Coleman*, 501 U.S. at 749–50.

## B.

Liles attempts to show "cause" and "prejudice" by saying he received ineffective assistance of counsel. We can begin and end with "cause"—Liles hasn't shown "cause for the default." *See Coleman*, 501 U.S. at 750.

In some circumstances, "[a]ttorney error that amounts to ineffective assistance of counsel can constitute 'cause' under the cause and prejudice test." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citation modified). But to show ineffective assistance, "a petitioner must meet the standard laid out in *Strickland*" by showing that (1) his counsel's failure was "objectively unreasonable" and (2) this failure "prejudiced" him. *Bennett v. Brewer*, 940 F.3d 279, 286 (6th Cir. 2019); *see Strickland v. Washington*, 466 U.S. 668 (1984). So, to show "cause" under *Coleman*, Liles must show "cause" and "prejudice" under *Strickland*.

The state doesn't meaningfully dispute that Bucio's failure to object was objectively unreasonable. Instead, it disputes only the second *Strickland* prong—whether this failure prejudiced Liles.

To satisfy *Strickland*'s prejudice requirement, Liles must show "that there is a reasonable probability that, but for [Bucio]'s unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this test, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* That means a "substantial, not just conceivable, likelihood of a different result." *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (per curiam) (citation modified). And "[t]he gap between a substantial likelihood and a preponderance of the evidence is 'slight and matters only in the rarest case.'" *White v. Plappert*, 131 F.4th 465, 479 (6th Cir. 2025) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citation modified)). But the Supreme Court has interpreted its jurisprudence as "suggest[ing] that any amount of actual jail time has Sixth Amendment significance." *Glover v. United States*, 531 U.S. 198, 203 (2001).

To assess *Strickland* prejudice, we compare what should've happened with what did happen. *See Strickland*, 466 U.S. at 695. We've found prejudice when defense lawyers failed to present mitigating evidence to a jury. *See Goodwin v. Johnson*, 632 F.3d 301, 330–31 (6th Cir. 2011) (citing cases). And we found no prejudice when a prisoner's lawyer didn't attempt to negotiate a plea deal, because the prisoner "offer[ed] no evidence to demonstrate a reasonable probability that the government would have offered him a better deal." *Gilbert v. United States*, 64 F.4th 763, 772 (6th Cir. 2023) (citation modified).

Here, Bucio's error affected the sentencing hearing. But not by much. The state explicitly reserved the right to be heard at sentencing in Liles's plea agreement, and the judge overruled Bucio's objection to the prosecutor's comments about the severity of Liles's crimes. So we needn't consider an alternate reality where the prosecutor didn't speak at all. Rather, we consider an alternate reality where the prosecutor gave his same speech about the severity of Liles's crimes, but Bucio voided the two improper statements by objecting.

Two courts have asked whether the prosecutor's statements made any difference in Liles's sentence.  Those courts reached the same conclusion:  No.  The state appellate court wrote that Liles "fails to direct us to any evidence in the record indicating that the trial court would have sentenced him to a lesser term absent the prosecutor's improper remarks at sentencing."[1]  *Liles*, 2015 WL 4610672, at *6.  It noted that the prosecutor's speech "accounted for six pages of the forty-page transcript," while the judge's dialogue with Liles accounted for fifteen pages.  *Id.* at *8.  The court also noted the judge's response to Bucio's first objection— "it's just argument at sentencing.  Overruled.  Go ahead."  *Id.* at *10.  The district court came to the same conclusion.  Based on its reading of the record, "the sentencing court rested its sentence on bases entirely independent of the prosecutor's recommendation."  R.40, PageID 2617 (citation modified).

Those courts got it right.  The transcript contains little evidence that the prosecutor's statements influenced the sentencing judge.  *See Gilbert*, 64 F.4th at 772.  If anything, the transcript suggests the opposite.  The sentencing judge downplayed the proceeding's significance, saying "it's just argument at sentencing."  R.30-2, PageID 2387.  Then he heard from Bucio, witnesses, and Liles.  The judge had a debate with Liles, which didn't reference the prosecutor's statements.  And when the judge explained his reasoning, he never mentioned the recommendation.  He'd read the plea agreement, which he physically held during the change-of-plea hearing, and he knew its terms.  In the end, the judge still imposed a sentence well below the potential maximum.  Without showing why the sentence would've been different, Liles hasn't provided evidence sufficient to "undermine confidence in the outcome."  *See Strickland*, 466 U.S. at 694.  That's because the prosecutor's statements "played, at best, a minor role in the court's sentence."  *United States v. Smith*, 2025 WL 1927570, at *2 (6th Cir. July 14, 2025) (citation modified).

---

[1]There appears to be some dispute in our Circuit on whether to apply AEDPA deference to the state appellate court's "prejudice" decision in this context.  *Compare Moss v. Miniard*, 62 F.4th 1002, 1014 (6th Cir. 2023) (applying AEDPA deference to a state appellate court's prejudice holding), *with Hall v. Vasbinder*, 563 F.3d 222, 236–37 (6th Cir. 2009) ("An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel.  The latter must meet the higher AEDPA standard of review, while the former need not." (citation modified)).  Here, the state court answered the same question we now ask—whether Bucio's failure to object meets *Strickland*'s prejudice standard.  *See Liles*, 2015 WL 4610672, at *11.  But because deference wouldn't affect our outcome, we decline to explore this issue.

In response, Liles makes three arguments. First, he points to the judge's verbal inventory of every speaker's views at sentencing, including the prosecutor's. Among other things, the judge said that Liles's sentence was "based upon the statements of all of the people that spoke up today, including the defendant." R.30-2, PageID 2417. It's unclear whether "sp[eaking] up" included the prosecutor's planned statement. But assuming it did, this boilerplate language still doesn't "undermine confidence in the outcome." *See Strickland*, 466 U.S. at 694. The judge was covering his bases under Ohio law, which requires sentencing judges to "[c]onsider the record [and] any information presented at the hearing by any person." Ohio Rev. Code § 2929.19(B)(1)(a).

Second, Liles says that his colloquy with the judge reflected the prosecutor's statements, which emphasized the downstream effects of dealing drugs. To start, there's nothing special about a judge considering the effects of a crime. *See id.* § 2929.12 (requiring sentencing courts to consider whether the defendant's conduct is "more serious than conduct normally constituting the offense"). And in context, it's clear that the judge raised the crime's effects for a different reason. Liles insisted that he hadn't sold "to people on the street," which lessened his culpability. R.30-2, PageID 2406–07. So the judge responded, "where were the drugs going to end up eventually? . . . [I]n the stream of commerce." *Id.* at PageID 2407. Even if the prosecutor's non-breaching comments influenced the colloquy, that doesn't suggest that the prosecutor's recommendation influenced the sentence.

Third, Liles says that the overlap between the judge's stated reasons and the prosecutor's recommendation shows that the latter prejudiced the former. The judge highlighted the same two sentencing justifications as the prosecutor: the seriousness of the offense and the need to protect the public. That's hardly a coincidence, but not for the reason Liles suggests. These two justifications—retribution and protection—are among the oldest, most generic justifications for punishment. *See Kennedy v. Louisiana*, 554 U.S. 407, 420 (2008) ("[P]unishment is justified under one or more of three principal rationales: rehabilitation, deterrence, and retribution."); *Bd. of Comm'rs of Champaign Cnty. v. Church*, 57 N.E. 50, 52 (Ohio 1900) ("The primary purpose of the legislature was punishment and correction.").

In sum, Liles hasn't provided any evidence that "undermine[s our] confidence in" his sentence. *See Strickland*, 466 U.S. at 694.

## III.

We AFFIRM the district court's denial of Liles's habeas petition.